DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 2023-cr-0016 |
| ) | |
| ENOCK COLE and JIOVONI SMITH, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**Attorneys:**
**Rhonda Williams-Henry, Esq.**
St. Croix, U.S.V.I.
**Denise George, Esq.**
St. Thomas, U.S.V.I.
   *For the United States*

**Raul E. Bandas, Esq.**
**Jessica Earl, Esq.**
**Celso Perez, Esq.**
San Juan, P.R.
**Gary Proctor, Esq.**
Baltimore, MD
   *For Defendant Enock Cole*

**Juan F. Matos de Juan, Esq.**
San Juan, P.R.
**Teri L. Thompson, Esq.**
Snellville, GA
   *For Defendant Jiovoni Smith*

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Enock Cole's ("Defendant Cole") "Motion in Limine: Defendant under Bail Release and Electronic Monitoring" (Dkt. No. 91) ("Motion in Limine"); the United States' Opposition thereto (Dkt. No. 95); Defendant Cole's Reply to the United States' Opposition (Dkt. No. 99); and oral argument before the Court on August 13, 2025. For the reasons discussed below, the Court will deny Defendant Cole's Motion in Limine (Dkt. No. 91).

### I.     BACKGROUND

In February 2018, Defendant Cole was released on bail while awaiting trial on criminal charges filed in the Superior Court of the Virgin Islands in connection with an incident which occurred on August 17, 2015. (Dkt. No. 91 at 2); *February 26, 2018 Order Granting Stipulated Pretrial Release Order, Signed by Judge Harold W.L. Willocks*, V.I. Super. Ct., Case No. SX-2016-CR-00273. As a condition of his pretrial release, Defendant Cole was placed on house arrest wearing a Global Positioning System ("GPS") ankle bracelet. (Dkt. No. 91 at 2); *February 5, 2018 Stipulation Pretrial Release*, V.I. Super. Ct., Case No. SX-2016-CR-00273. Defendant Cole was subsequently convicted of Murder in the Second Degree, Robbery in the First Degree, Assault in the First Degree, and Unauthorized Use of a Vehicle. (Dkt. No. 91 at 2); *January 20, 2021 Amended Memorandum Opinion* at ¶ 6, V.I. Super. Ct., Case No. SX-2016-CR-00273. As a result of this conviction, on March 19, 2022, Defendant Cole was sentenced to 30 years of imprisonment by the Superior Court of the Virgin Islands. *Judgment and Sentence Signed*, V.I. Super. Ct., Case No. SX-2016-CR-00273.

On January 23, 2024, Defendant Cole was charged by Indictment in the instant matter with six counts in connection with an incident which took place on November 14, 2018. (Dkt. No. 8 at 1).[1] The Indictment alleges that on November 14, 2018, Defendant Cole and co-defendant Jiovoni Smith ("Defendant Smith"), along with an unindicted minor co-conspirator, entered Castaways, a restaurant and bar located in Estate Solitude, St. Croix, U.S. Virgin Islands. *Id*. The Indictment

---

[1] Defendant Cole is charged with violating the following federal and local laws: Count One: 18 U.S.C. § 1951(a) - Interference with Commerce by Robbery; Count Two: 18 U.S.C. § 924(c)(1)(A) - Discharge of a Firearm During and in Relation to a Crime of Violence; Count Three: 18 U.S.C. § 924(j)(1) - Use of Firearm During a Crime of Violence Resulting in Death; Count Four: 18 U.S.C. § 25 - Use of a Minor in a Crime of Violence; Count Six: 14 V.I.C. § 922(a)(1) and § 923 - First Degree Murder; and Count 7: 14 V.I.C. § 922(a)(2) and § 923 - First Degree Murder. (Dkt. No. 8).

alleges that Defendants Cole and Smith held a Castaways' employee at gunpoint, forcing him to open the cash register and remove the money inside. *Id*. In the course of this robbery, it is alleged that Defendants Cole and Smith shot and killed a patron of the restaurant, Mr. Derrick Cribb. *Id*. at 8. Defendants Cole and Smith deny these allegations and have entered pleas of not guilty to all counts. (Dkt. No. 47 at 1; Dkt. No. 91 at 2).

Defendant Cole moves to exclude evidence that "in November 2018, Mr. Cole was out on bail release wearing a GPS ankle bracelet while awaiting trial on the four criminal counts filed in 2016 before the Superior Court of the Virgin Islands" and that he was subsequently sentenced to 30 years of imprisonment. (Dkt. No. 91 at 1, 3). Defendant Cole argues that this evidence would infringe upon his Sixth Amendment right to trial by an impartial jury, as it is prior bad act evidence forbidden by Fed. R. Evid. 404(b). *Id*. at 3. Specifically, Defendant Cole contends that evidence regarding his Superior Court charges, GPS ankle bracelet, and subsequent conviction is extrinsic evidence "wholly irrelevant in this case." *Id*. at 5. Further, Defendant Cole argues that "the criminal charges filed in 2016 cannot establish motive, opportunity, intent, preparation, plan, knowledge, identity, lack of mistake, or lack of accident on the part of Mr. Cole to in any way justify his participation in the 2018 federal crimes." *Id*. The Government opposes the Motion in Limine, arguing that evidence of Defendant Cole's GPS ankle bracelet is not subject to Fed. R. Evid. 404(b) as it constitutes intrinsic evidence of the charged crimes, and that its probative value is not substantially outweighed by its prejudicial effect. (Dkt. No. 95 at 3-4).

## II.    APPLICABLE LEGAL PRINCIPLES

The Third Circuit applies a two-step test to decide the admissibility of evidence of a defendant's other crimes and bad acts at trial: (1) determine whether the bad acts are "extrinsic" or "intrinsic" to the charged offense and (2) if extrinsic, analyze the evidence under Fed. R. Evid.

3

404(b). *United States v. Green*, 617 F.3d 233, 245 (3d Cir. 2010) ("[M]odern cases divide evidence of other crimes and bad acts into two categories: those 'extrinsic' to the charged offense, and those 'intrinsic' to it. Extrinsic evidence must be analyzed under Rule 404(b); intrinsic evidence need not be.")

### A. Intrinsic and Extrinsic Evidence

As a preliminary matter, it must be decided whether the other bad act is "intrinsic" or extrinsic" to the charged offense. Evidence is only found to be intrinsic in the Third Circuit if it fits into one of "two narrow categories." *United States v. Green*, 617 F.3d at 248. Evidence is intrinsic only if: (1) "it directly proves" the charged offense; or (2) it is an "uncharged act[] performed contemporaneously with the charged crime . . . [which] facilitate[s] the commission of the charged crime." *Id.* at 248-249. Evidence which directly proves an offense is evidence of "an act that is part of the charged offense."[2] *Id*. at 248.

A Fed. R. Evid. 404(b) analysis applies only to extrinsic evidence. *See United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999) ("Rule 404(b), which proscribes the admission of evidence of other crimes when offered to prove bad character, does not apply to evidence of uncharged offenses committed by a defendant when those acts are intrinsic to the proof of the charged offense.") Therefore, evidence found to be intrinsic is admissible—subject to exclusion on the basis of any other applicable rule—and is not subject to Rule 404(b) disclosure

---

[2] An illustrative example of evidence that "directly proves" the charged offense can be found in *United States v. Cammarata*, 145 F.4th 245, 367 (3d Cir. July 22, 2025). "To prove wire fraud, the Government had to show that the defendant willfully participated in a scheme or artifice to defraud with intent to defraud. Juries may infer a defendant's intent to defraud from circumstantial evidence. The failure by Cammarata to report the transfers of settlement funds from Alpha Plus to PB Trade as income on his tax returns supported a reasonable inference that he knew the funds were unlawfully obtained and that he was attempting to conceal income derived from his fraudulent scheme." *Id*. (citation modified).

4

requirements, because its intrinsic status means there is no "other" wrongful conduct at issue. *United States v. Green*, 617 F.3d at 245. However, evidence deemed to be extrinsic must be analyzed pursuant to Fed. R. Evid. 404(b). *Id*.

### B. Admissibility under Fed. R. Evid. 404(b)

If bad act evidence is found to be extrinsic to the charged crime, it must be evaluated under a four-part test which governs the admissibility of evidence of other bad acts under Fed. R. Evid. 404(b). The purpose of Rule 404(b) is "simply to keep from the jury evidence that the defendant is prone to commit crimes or is otherwise a bad person, implying that the jury needn't worry overmuch about the strength of the government's evidence." *United States v. Green*, 617 F.3d at 249 (citation modified). However, the Rule is "generally a rule of exclusion . . . [i]t directs that evidence of prior bad acts be excluded—*unless* the proponent can demonstrate that the evidence is admissible for a non-propensity purpose." *United States v. Phillip*, No. CR 2019-0001, 2023 WL 2987590, at *2 (D.V.I. Apr. 18, 2023) (quoting *United States v. Brown*, 765 F.3d 278, 291 (3d Cir. 2014)).

To be admitted pursuant to Rule 404(b), extrinsic other bad act evidence must: "(1) have a proper, non-propensity purpose; (2) be relevant to that non-propensity purpose; (3) satisfy the requirement under Federal Rule of Evidence 403 that its probative value is not substantially outweighed by the risk of unfair prejudice; and (4) be accompanied by a limiting instruction where requested."[3] *United States v. Miah*, 120 F.4th 99, 110 (3d Cir. 2024).

---

[3] The fourth part of the test prescribes that where requested, the court must provide a limiting instruction to the jury which "carefully circumscribe[s] the purpose for which the jury [can] consider the evidence." *United States v. Green*, 617 F.3d at 252.

5

### 1.     Proper Non-Propensity Purpose

As an initial matter, the proponent of the evidence must identify its proper, non-propensity purpose. *United States v. Cabrera*, 660 F. App'x 126, 129 (3d Cir. 2016). In determining whether other-act evidence has a proper, non-propensity purpose "the threshold inquiry a court must make . . . is whether that evidence is probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 682 (1988). Whatever the asserted purpose of the other-act evidence, it must be consequential to the outcome of the matter to be a proper purpose. *United States v. Cabrera*, 660 F. App'x at 129. Fed. R. Evid. 404(b) specifically provides "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" as examples of proper, non-propensity purposes. Further, the Third Circuit has identified "supplying helpful background information to the finder of fact" as a proper, non-propensity purpose. *United States v. Green*, 617 F.3d at 250.

### 2.     Relevance to Non-Propensity Purpose

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401; *United States v. Green*, 617 F.3d at 251. To show that evidence is relevant to and probative of a proper, non-propensity purpose, the other-act evidence must fit into a "chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *Id*. at 250; *see also United States v. Cabrera*, 660 F. App'x at 129 (citation modified) (holding "the proponent must proffer a logical chain of inference consistent with its theory of the case[.]"). Relevance is "very broad[ly]" defined. *United States v. Green*, 617 F.3d at 251 (citing *Gibson v. Mayor & Council of Wilmington*, 355 F.3d 215, 232 (3rd Cir. 2004)). The ruling court must articulate the reason the proposed evidence is relevant

6

to something other than the defendant's character and propensity when ruling on its admission. *United States v. Cabrera*, 660 F. App'x at 129.

### 3. Fed. R. Evid. 403

If evidence is relevant to a proper, non-propensity purpose, it may still be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. "A large risk of unfair prejudice is tolerated for highly probative evidence." *United States v. Cabrera*, 660 F. App'x at 129 (citation modified). Notably, the Third Circuit has previously approved admission of Rule 404(b) evidence pertaining to the commission of murders which were not part of the case at issue—overruling defendant's Rule 403 objections—when the Government's case against defendant heavily relied on the testimony of his unindicted co-conspirators, and evidence describing their relationship to the defendant and the control which he exerted over them in the commission of these previous crimes was relevant to the credibility of their testimony. *United States v. Scarfo*, 850 F.2d 1015, 1020 (3d Cir. 1988).

### III. DISCUSSION

Defendant Cole moves to exclude evidence from trial that in November 2018: (1) Defendant Cole was on bail with a GPS ankle bracelet; (2) Defendant Cole was awaiting trial on four criminal counts filed before the Superior Court of the Virgin Islands in St. Croix; and (3) Defendant Cole was subsequently sentenced to a term of imprisonment of 30 years. (Dkt. No. 91 at 1). The Government represents that it has no intention of presenting evidence at trial that Defendant Cole was awaiting trial on four criminal counts in November 2018 or that Defendant Cole was subsequently convicted and sentenced to a term of 30 years. Accordingly, Defendant Cole's Motion in Limine as to the exclusion of that evidence is moot. (Dkt. No. 95 at 2). Therefore, the Court will address only the question of whether evidence pertaining to Defendant Cole wearing

7

a GPS ankle bracelet in November 2018 is admissible either as intrinsic evidence, or as other bad act evidence pursuant to Rules 404(b) and 403.

### A.  Extrinsic or Intrinsic Evidence

As an initial matter, the Court finds evidence that Defendant Cole was wearing a GPS ankle bracelet in November 2018 to be extrinsic evidence, as this evidence falls into neither established category of intrinsic evidence.

All charges in this matter arise out of the armed robbery and shooting which occurred on November 14, 2018 ("Castaways shooting"). (Dkt. No. 8 at 1). The Government makes no argument that Defendant's GPS ankle bracelet "directly proves" the offense. Rather, the Government asserts that it "is intrinsic evidence because there was an 'uncharged act' that was 'performed contemporaneously with the charged crime that facilitated the commission of the charged crime.'" (Dkt. No. 95 at 3). At oral argument on August 13, 2025, the Government expanded on this assertion, positing that Defendant Cole's uncharged act—leaving his residence despite being bound to it while on house arrest—occurred simultaneously with the commission of the charged crime—the Castaways shooting—and facilitated its commission by allowing Defendant Cole to travel to the location where the Castaways shooting occurred. However, evidence that Defendant Cole left his residence, thus allowing him to travel to Castaways—the alleged uncharged act—is not synonymous with Defendant Cole's wearing of a GPS ankle bracelet—the evidence sought to be introduced. Therefore, evidence of Defendant Cole's GPS ankle bracelet is not *evidence of an uncharged act* performed contemporaneously with the charged crime that facilitated the commission of the charged crime.

### B.  Admissibility under Fed. R. Evid. 404(b)

The Court finds evidence of Defendant Cole's GPS ankle bracelet admissible pursuant to

Fed. R. Evid. 404(b) as relevant to identity and opportunity.

First, evidence of the GPS ankle bracelet is relevant to the proper non-propensity purpose of proving Defendant Cole's identity as one of the individuals who committed the charged act. The Government has represented to the Court, both in written and oral argument, that they will be presenting an eyewitness who will identify Defendant Cole as one of the perpetrators of the Castaways murder. (Dkt. No. 95 at 3-4). Specifically, as part of the testimony, the Government represents that this witness will state that he heard a GPS ankle bracelet make a noise during the commission of the robbery. Further, Defendant Cole asserts that he has reason to believe the witness will testify that he heard Defendant Cole state "he needed to be taken home right away to plug in his GPS ankle bracelet because it was dead." (Dkt. No. 91 at 6).

This witness testimony creates a clear chain of logical inferences in that the Government will present evidence that Defendant Cole was wearing a GPS ankle bracelet; and that a witness heard a GPS ankle bracelet make a noise; and that a witness heard Defendant Cole say that he had to go home to charge his GPS ankle bracelet because it was dead. This characteristic—the wearing of a GPS ankle bracelet—that Defendant Cole and one of the perpetrators of the Castaways shooting allegedly shared, makes it more probable that a jury would identify Defendant Cole as one of the perpetrators than it would be without the evidence of Defendant Cole's GPS ankle bracelet.

Second, the GPS ankle bracelet is relevant to the proper non-propensity purpose of proving Defendant Cole's opportunity to commit the charged act. The Government argues that "evidence regarding the installation and functioning of defendant's GPS unit is critical to establish that the device was properly functioning because he was being traced successfully the day before the murder and the day after the murder" (Dkt. No. 95 at 3), but not the night of the murder, and that

this is relevant to "establish[ing] the defendant's presence at the scene of the crime" (*id*. at 4). Again, a clear logical chain of inferences is present: Defendant Cole's GPS ankle bracelet was intended to prevent him from leaving his residence in November 2018 without being detected; and the GPS ankle bracelet was properly functioning the day before the crime; and the GPS ankle bracelet was not transmitting Defendant Cole's location on the night of the crime, thus allowing him the opportunity to leave his home without being detected; and the GPS ankle bracelet was transmitting his location the day after the crime; and the opportunity to leave his home without being detected at this specific time allowed him to travel to the scene of the crime at the time the crime was committed. The fact that Defendant Cole had the opportunity to be present at the scene of the crime makes it more probable that a jury would find he committed the crime than it would be without the evidence of Defendant Cole's GPS ankle bracelet failing on the night that the crime was committed.

For both these proper, non-propensity purposes, the probative value of the evidence that Defendant Cole was wearing a GPS ankle bracelet in November 2018 is not "substantially outweighed" by the danger of "unfair prejudice" (Fed. R. Evid. 403), given that the Government will not be introducing evidence of the underlying crime, subsequent trial, and conviction. The evidence pertaining to the functioning of Defendant Cole's GPS ankle bracelet is highly probative, and any prejudice can be mitigated by an appropriate limiting instruction, if necessary.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds: (a) that evidence of Defendant Cole's GPS ankle bracelet is extrinsic to the charged crime; and (b) that evidence of Defendant Cole's GPS ankle bracelet is admissible at trial in the instant matter, pursuant to Fed. R. Evid. 404(b), for the non-propensity purposes of proving identity and opportunity.

**ORDER**

**UPON CONSIDERATION** of the foregoing, it is hereby

**ORDERED** that Defendant Cole's "Motion in Limine: Defendant under Bail Release and Electronic Monitoring" (Dkt. No. 91) requesting the exclusion of evidence of Defendant Cole's GPS ankle bracelet is **DENIED**; and it is further

**ORDERED** that Defendant Cole's "Motion in Limine: Defendant under Bail Release and Electronic Monitoring" (Dkt. No. 91) requesting the exclusion of evidence that Defendant Cole was awaiting trial on four criminal counts filed before the Superior Court of the Virgin Islands in St. Croix in November 2018 is **DENIED AS MOOT**; and it is further

**ORDERED** that Defendant Cole's "Motion in Limine: Defendant under Bail Release and Electronic Monitoring" (Dkt. No. 91) requesting the exclusion of evidence that Defendant Cole was subsequently sentenced to a term of imprisonment of 30 years is **DENIED AS MOOT**.

Dated: September 6, 2025

                                                                                       /s/  
                                                  WILMA A. LEWIS  
                                                  Senior District Judge